# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John A. Nordberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 5984 | **DATE** | 1/25/2011 |
| **CASE TITLE** | Denise McCann vs. Hy-Vee, Inc. | | |

**DOCKET ENTRY TEXT**

Defendant's motion to dismiss [10] is granted.

■ [ For further details see text below.]   Docketing to mail notices.

## STATEMENT

   **Introduction.** This case arises out of a 2002 divorce settlement between plaintiff Denise McCann and her then husband, Anthony McCann. (We use first names to distinguish the ex-spouses.) Denise alleges that Anthony and his employer, Hy-Vee, Inc., committed fraud in 2002 when Denise and Anthony were negotiating a settlement to their divorce proceeding. Anthony and Hy-Vee allegedly misrepresented to Denise that Anthony's company stock was non-transferable under the terms of his employment agreement and that Hy-Vee was not willing to make an exception to lift these restrictions. The representations were proven false, according to Denise, in 2007 when Anthony convinced Hy-Vee to lift the restrictions on transferability to allow a buy-back of Hy-Vee shares awarded to Denise under the 2002 divorce settlement. Under the terms of the settlement, the offer to buy back Denise's shares terminated Anthony's alimony obligation which would have continued for another five years, amounting to approximately $220,000 in lost alimony payments.

    In this lawsuit, Denise is asserting a Rule 10b-5 securities fraud claim against Hy-Vee, alleging that Hy-Vee made a fraudulent statement in connection with Denise's purchase of Hy-Vee shares, the "purchase" being the awarding Hy-Vee shares to her under the 2002 divorce decree.

  Hy-Vee now moves to dismiss the Rule 10b-5 claim based on three independent arguments. For the reasons explained below, we grant the motion based on Hy-Vee's third argument, specifically its argument that Denise's claim is barred by the five-year statute of repose.

   **Facts.** The following facts are taken from the complaint and are assumed true for purposes of ruling on the present motion.

    In the summer of 2002, Denise and Anthony were negotiating an end to what had been an acrimonious divorce proceeding. Mediation was tried but failed. Each spouse was represented by an attorney. Denise was a stay-at-home mom who had not attended college. Anthony was a high-level executive for Hy-Vee earning around $300,000 a year. The couple had four children, three still minors at this time.

**STATEMENT**

Under Anthony's employment agreement with Hy-Vee, he was required to use at least 15% of his income to buy Hy-Vee stock. And over the years, he had acquired a number of Hy-Vee shares, which made up the bulk of the family's assets.

Denise was initially interested in receiving a lump-sum distribution. But a question existed as to whether this was possible given that the family assets were tied up in Hy-Vee stock. Anthony and his lawyer explained that the Hy-Vee shares were subject to transferability restrictions under Anthony's employment agreement and could only be sold if Anthony quit, was fired, or died. Denise's attorney asked Anthony if Hy-Vee would be willing to make an exception and allow the sale of some shares to facilitate the divorce. Anthony said no. Apparently suspicious of this answer, Denise's attorney talked to a Hy-Vee vice-president named John Briggs who allegedly said that Anthony was correct and that Hy-Vee did not purchase stock from its employees upon demand and that there were "no exceptions" to this company rule. (¶ 42.)

The "no exceptions" statement by Briggs is the central allegation in the complaint. Denise alleges it was false. She claims that Anthony and his employer knew that Anthony -- "at any time" (¶ 47) -- could simply ask the Hy-Vee Executive Committee to purchase the stock and Hy-Vee would do so. In short, the statement was part of a fraudulent scheme by Anthony and his employer to help Anthony get a better divorce settlement.

Denise alleges that she relied on the Briggs statement in two key respects. First, she dropped her demand for a lump-sum settlement and agreed to accept Hy-Vee stock. In fact, she says that during negotiations she became persuaded by Anthony's claim that the Hy-Vee stock would be a good long-term retirement asset.

Ultimately, in the decree, Denise was "awarded" 22,129 shares of Hy-Vee stock (she also got the family home, cash, and other assets) and Anthony kept 47,543 Hy-Vee shares (plus other assets). A prominent issue in this case, analyzed below, is whether the "awarding" of shares pursuant to the divorce decree can qualify as a "sale" in order to meet the purchase/sale requirement for bringing a Rule 10b-5 claim. The complaint uses various terms to describe this transaction -- *e.g.* Denise "agreed to accept" the Hy-Vee stock (¶¶ 5, 43); she was "given possession of" the shares (¶ 4); she "received" the shares from Anthony (¶ 44). However, the complaint does not provide any details about the specific legal nature of the transfer. Nevertheless, one point is clear. Denise is asserting that, as of 2002, she had control and possession of 22,129 shares. She claims the divorce decree "did not place any limits" on what she could do with her stock. (Pl. Resp. at 3.) She also repeatedly refers to them in the complaint, and in her briefs, as "her" shares. *See, e.g.*, ¶ 80.

The second and more harmful consequence of the Briggs statement, according to Denise, is that it affected how the alimony provision was structured. To explain, we must delve into the details of the divorce decree. (Plaintiff did not attach a copy of the decree; we therefore rely on the description set forth in the complaint.) The alimony obligation was broken into two consecutive five-year periods book-ended around May 2007, the date when the youngest child would finish high school and presumably begin the process of leaving home for college and also when Anthony's child support obligation would terminate. The second five-year period would run from June 2007 until August 2012. During this second period, Anthony was obligated to pay Denise $3,500 a month in alimony. The total amount projected over the five-year period was approximately $220,000.

However, during negotiations, Anthony asked that the alimony obligation in the second five-year period terminate if, during that time, either he or Denise became "able to" sell their Hy-Vee shares. (¶ 58.) Denise agreed to the request because she "understood" (¶ 57), based on the Briggs statement, that the only way either party would be able to sell the shares was if one of the unlikely-to-occur conditions in the employment agreement were met. It is not clear why Denise's attorney, who seemed worried about the possibility that Anthony would persuade Hy-Vee to make an exception, chose to rely on Denise's "understanding" of the divorce decree rather than having this understanding explicitly put into the language

of the decree. In any event, Denise now complains that Anthony essentially got an "unfettered right" to terminate his alimony obligation at any time during the second-year period, something she'd never have agreed to if she had known the truth.

In April or May 2007, shortly before the second five-year alimony period was set to begin, Denise's fears were realized. Anthony went to Hy-Vee's CEO, Ric Jurgens, and asked if Hy-Vee would purchase the 22,129 shares awarded to Denise. (¶ 64.) Hy-Vee said yes and, in June 2007, sent a letter to Anthony stating that Hy-Vee was willing to purchase Denise's shares. But Denise refused this offer. Anthony in turn quit paying alimony because he believed that the Hy-Vee offer terminated his alimony obligation. (¶ 70.)

The parties then litigated these general issues in Iowa state court in two separate rounds of litigation. We use the term "general issues" because we do not know the specific arguments raised by Denise or Anthony, nor the reasons why the Iowa courts ruled the way they did, nor importantly whether Denise raised the same fraud claim she is litigating here. The complaint, however, does provide a general description of the state court lawsuits.

The first round was initiated by Anthony who filed a petition seeking to compel Denise to sell her shares in response to Hy-Vee's offer, arguing that she was required to do so by the divorce decree. (¶¶ 76-77.) The Iowa court held an evidentiary hearing and then, on September 28, 2007, found in Anthony's favor and ordered Denise to deliver her Hy-Vee shares. (¶ 79.) Denise appealed this ruling, but the Iowa Supreme Court denied her petition in January 2008. (¶¶ 80, 82.) As a result, Denise delivered her shares to Anthony in exchange for $711,526.66. (¶ 82.)

The second round of litigation was initiated by Denise in 2008. She filed suit seeking to restart the alimony payments Anthony had stopped paying in June 2007. (¶ 85.) A two-day trial was held in January 2009 and the court dismissed Denise's petition on May 4, 2009. (¶ 87.) Again, the complaint does not give any details about what evidence and arguments were presented in the two-day hearing.

A little over four months later, on September 25, 2009, Denise filed this lawsuit asserting a single claim under Rule 10b-5 against Hy-Vee. Denise seeks to recover $220,000 in alimony payments that would have been paid over the second five-year alimony period, legal fees spent in the two rounds of state court litigation, extra taxes she was required to pay from the 2008 sale ordered by the Iowa court, and other damages.

**Analysis.** Hy-Vee's motion to dismiss rests on three arguments, each attacking a particular requirement for bringing a Rule 10b-5 claim. Before analyzing these specific arguments, it is worth pausing to view plaintiff's claim from a broader perspective.

It is fair to say that this is an atypical case under Rule 10b-5, a point even Denise concedes. It arises out of, and is heavily intertwined with, an alleged fraud in a divorce settlement. In 2007 and 2008, after Denise became aware of the alleged fraud, the parties extensively litigated these general issues in state court. It was only after this litigation concluded that Denise filed this lawsuit. Even though she alleges that Anthony and Hy-Vee made the same exact fraudulent misrepresentation, she does not name Anthony as a defendant. Although Denise is asserting a securities fraud claim, she is not complaining that she was duped by Hy-Vee into buying a poor performing stock, one which she now regrets having purchased. Just the opposite: the stock has continuously grown in price throughout the years Denise held it, and she is upset that the Iowa court forced her to sell the stock in 2008.

In this Court's view, the use of Rule 10b-5 in this factual context stretches the doctrine beyond its core purpose of "maintain[ing] public confidence in the marketplace." *See Dura Pharmaceuticals, Inc.*, 544 U.S. 336, 345 (2005); *Davidson v. Belcor, Inc.*, 933 F.3d 603, 606 (7th Cir. 1991) ("the fundamental purpose of Section 10(b) and Rule 10b-5 is to implement a policy of full and fair disclosure so that potential purchasers and sellers can make informed investment decisions"). Of course, the mere fact that a legal doctrine is being extended beyond its original and natural context is not by itself an argument to dismiss a claim, but it nonetheless does suggest caution. S*ee Skilling v. United States*, 130 S.Ct. 2896 (2010) (refusing to extend

the honest-services statute beyond the "core meaning" of proscribing bribes and kickbacks because doing so would create "vagueness" problems); *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 226-27 (7th Cir. 1997) ("When a statute is broadly worded in order to prevent loopholes from being drilled in it by ingenious lawyers, there is a danger of its being applied to situations absurdly remote from the concerns of the statute's framers.").

More specifically, plaintiff's attempted use of Rule 10b-5 implicates issues of federalism and court efficiency. To put it in the vernacular common to litigators, a question arises whether Denise is using a novel legal theory (suing her husband's employer under Rule 10b-5) to get a third bite of the apple in her ongoing divorce battle with her husband? At this point, there is simply not enough evidence to know for sure. However, several facts suggest this could be the case. As alleged in the complaint, the state court litigation concerned the issue of whether the divorce decree required Denise to sell her Hy-Vee stock to Anthony and also whether Anthony could stop paying alimony. It is hard to imagine how the state court's resolution of these issues would not have addressed the fraud allegations raised here. Plaintiff is seeking damages here in the form of lost alimony payments. And that is what she also sought from the Iowa court when she asked it to order Anthony to re-start alimony payments. By all accounts, the Iowa court took the matter seriously and devoted substantial judicial resources to it, holding two days of evidentiary hearings. The concern then is that this case would simply be a repeat of the state court litigation,, a conclusion supported by the first paragraph of Denise's complaint, which states that her allegations in this case are based on "sworn testimony from various hearings and depositions." (Cmplt. p.1.) Though the complaint fails to say exactly where these "hearings and depositions" came from, the state court litigation seems like the obvious candidate.

If the above conclusions are true -- namely, if plaintiff is in fact attempting to litigate fraud claims here that were already raised or that could have been raised in state court -- then a question arises as to whether her claims are barred under one or more of the following doctrines: (i) *res judicata* and collateral estoppel; (ii) the *Rooker-Feldman* doctrine; and (iii) the domestic relations exception to federal jurisdiction. *See Struck v. Cook County Public Guardian*, 508 F.3d 858, 860 (7th Cir. 2007) (applying domestic relations exception to foreclose litigation of guardianship question litigated in state court because, among other reasons, state courts "are assumed to have developed a proficiency in a core probate and domestic-relations matters and to have evolved procedures tailored to them, and some even employ specialized staff not found in federal courts"); *Golden v. Helen Sigman & Assocs., Ltd.*, 611 F.3d 356 (7th Cir. 2010) (*Rooker-Feldman* doctrine precluded litigation of divorce issues previously addressed by state court because the federal claim could not "be separated from the state court's judgment"). Here, in light of the two rulings by the Iowa state court, how could we rule in favor of plaintiff without calling into question the validity of the Iowa state court rulings? In particular, plaintiff alleges she was harmed by her sale of Hy-Vee stock, but this sale only took place once the Iowa court *ordered* it. She explicitly states that she was not willing to sell the stock, and Anthony could not force her to sell it without filing a lawsuit and getting a ruling in his favor. The damage was thus done only when the court issued its order. A similar analysis applies to the payment of alimony.

All this being said, despite our belief that plaintiff's claim will likely run into one or more of these doctrines down the road, we cannot rely on them now to dismiss her claim. For one thing, Hy-Vee did not raise any of these arguments, and we have therefore not given plaintiff a chance to brief these issues. For another thing, and this may be the reason Hy-Vee did not raise these arguments now, we do not have all the facts relating to the state court litigation given that the complaint did not provide any details. There may be reasons we do not know about why plaintiff could not raise the fraud claim in the two rounds of state court litigation.

We therefore turn to Hy-Vee's three specific arguments for dismissal. Hy-Vee first argues that Denise does not have standing to bring a Rule 10b-5 claim because she cannot show that she was a purchaser or seller of the Hy-Vee stock. Hy-Vee secondly argues that the alleged fraud (*i.e.* the Briggs statement) was

# STATEMENT

not made "in connection with" a purchase or sale of a security. Finally, Hy-Vee argues that the Rule 10b-5 claim is barred under both the statutes of limitation and repose. Although these arguments were presented as independent of each other, they ultimately work together to foreclose plaintiff's claim.

Turning to Hy-Vee's first argument that no sale or purchase occurred, only two possible dates suggest themselves: (1) August 2002 when the decree was entered and when Denise was "awarded" the Hy-Vee shares; and (2) January 2008 when the Iowa court ordered Denise to turn over these same shares.

Hy-Vee argues that *neither* transaction can qualify as a purchase or a sale because the divorce decree provided only that Denise would temporarily "hold" the stock, which was issued in Anthony's name, until such time as Anthony was first able to sell the shares. Hy-Vee further asserts that the shares were never transferred into Denise's name and she had no power to make any decisions with respect to them. Hy-Vee relies on *Davidson v. Belcor, Inc.*, 933 F.2d 603, 608 (7th Cir. 1991) where the Seventh Circuit stated that no sale or purchase occurred because the wife "had no input into the decision to sell the stock" and "no power to make any investment decisions."

In response to this first argument, Denise asserts that she made an investment decision when she agreed to accept Hy-Vee shares as part of the divorce settlement. It was this decision for which she needed accurate and reliable information. She further argues that the divorce decree placed no limits on her control of the shares thereafter. In short, Denise is arguing Hy-Vee's argument rests on facts which are not in the complaint and which she disputes. *See* Pl. Resp. at 8: "the nature of her ownership interest in her Hy-Vee stock are issues of fact that cannot be resolved on a motion to dismiss." We agree. Thus, for purposes of this motion, we will assume that the awarding of shares under 2002 divorce decree could constitute a "sale" to plaintiff of the Hy-Vee shares.

Hy-Vee next argues that there was no fraud in connection with the 2002 sale. If we assume that the relevant sale is the awarding of shares under the 2002 decree, which is what the first half of plaintiff's opening brief assumes, then plaintiff clearly has pled enough to show that the fraud was connected to this sale. The entire thrust of the complaint is that the Briggs statement in the summer of 2002 was temporally and causally connected to Denise's decision to accept the shares in August 2002.

So far so good for plaintiff. But her claim runs into problems when we turn to Hy-Vee's third argument that her claim is barred by both the two-year statute of limitations and the five-year statute of repose. We will only focus here on the repose argument, finding it sufficient to grant the motion, but if this case were to proceed, plaintiff would also have to overcome Hy-Vee's statute of limitations argument.

Hy-Vee agues that the statute of repose for a Rule 10b-5 claim begins on the date of the "violation," *see* 28 U.S.C. § 1658(b), which Hy-Vee argues is either when Briggs made the statement or a few months later when the decree was entered in August. Either way, both events took place by August 2002, more than seven years before plaintiff filed her complaint, and thus beyond the five-year repose period.

We agree with this analysis. In addition, another point should be made. In contrast to the statute of limitations, tolling arguments and questions about when a claim accrued are not relevant to the statute of repose, which as stated above begins on the date of the violation. *See, e.g., Engel v. Sexton*, 2009 WL 361108, 15 (E.D. La. Feb. 11, 2009) ("Statutes subject to a statute of repose are not subject to equitable tolling.") (citing to *Lampf, Pleva, Lipkin, Prupis & Petitgrow v. Gilbertson*, 501 U.S. 350, 363 (1991)); *Wafra Leasing Corp. v. Prime Capital Corp.*, 192 F.Supp.2d 852, 864 (N.D. Ill. 2002) ("That the cause of action has not accrued . . . is beside the point [for purposes of the statute of repose], because the defendant has committed the fraudulent act.").

In response to this repose argument, Denise at the end of her opening brief makes a subtle shift from the first half of the same brief. Rather than focusing on the sale in 2002, she shifts to the sale six years later. Specifically, she argues that the repose period did not begin until January 2008 because this was when "the sale of her Hy-Vee stock was completed." (Pl. Resp. at 12.) Her argument relies on two Seventh Circuit cases -- *Ferguson v. Roberts*, 11 F.3d 696 (7th Cir. 1993) and *McCool v. Strata Oil Co.*, 972 F.2d 1452 (7th

## STATEMENT

Cir. 1992) -- and the doctrine that the period may not begin to run until the "date the sale of the instrument is completed." (Pl. Resp. at 12, *quoting* from *McCool*). She then argues that the "sale of her Hy-Vee stock was not completed until January 2008." (Pl. Resp. at 12; *see also* Pl. Sur-reply at 1, stating that the "issue before this court is whether the five year period of repose started with the sale of Denise's Hy-Vee stock in early 2008.")

    These two statements seem to indicate that Denise is now basing her claim on the 2008 sale. Linguistically, this is the only logical interpretation because she states that she sold "her" shares in 2008, which would mean that she was selling shares she *already purchased* in an separate and earlier transaction. In the abstract, there would be nothing wrong with her basing her claim on the 2008 sale rather than the 2002 purchase. While such an interpretation would certainly avoid the limitations and repose problems raised by Hy-Vee's third argument, it would create a new problem with regard to Hy-Vee's second argument. As noted above, the only fraud alleged in the complaint is the Briggs statement. It was made in the summer of 2002. If plaintiff is now relying on the 2008 sale, the Briggs statement can no longer be considered "in connection with" that transaction. As a preliminary matter, relying on a statement made six years earlier is by itself questionable. More dispositively, Denise alleges in her complaint that she learned in 2007 that the Briggs statement was a lie. Therefore, from this point on, Denise could not claim to have been relying on the Briggs statement. And Denise has identified no other fraudulent statement, much less one made near the time of the 2008 "sale." She thus cannot show that the 2008 sale was caused by any fraudulent statement.

    Denise may be attempting to argue that the 2008 sale was, in effect, locked into place and foreordained by the 2002 decree. But this theory would not help her either, because it would still mean that the violation occurred in 2002, thereby starting the statute of repose on that same date. Elsewhere Denise suggests that she is trying to collapse the two transactions into one. But such a theory is not only logically inconsistent (how can one transaction be both a purchase *and* a sale?) but is contradicted by her request for damages in the form of capital gains she had to pay on the sale of stock in 2008. To get capital gains she would have had to have purchased the shares earlier and then held them while they grew in price. Again, this points to two separate transactions.

    To sum up, any claim based on the first transaction (the 2002 purchase) is barred by the statute of repose, and any claim based on the second transaction (the 2008 sale) is barred by failing to meet the "in connection with" requirement. For these reasons, the motion to dismiss is granted.